|155 343|
|176 519|

# Guarantee Trust & Safe Deposit Co. *v.* Craig, Appellant.

*Principal and surety—Promissory notes—Confession of judgment.*

The indorser on a promissory note is not discharged by a confession of judgment by the maker to the holder for the amount represented by the note, where the note is not surrendered and there is no stipulation or understanding that the judgment should be considered as satisfaction of the note.

*Assignment for benefit of creditor—Promissory note—Stay of execution— Discharge of surety.*

An assignee for the benefit of creditors, a trust company, under agreement with the assignor before the assignment, purchased with its own money certain promissory notes of its assignor, and took an assignment, from the original holder, of judgments which had been confessed to secure the notes, and withdrew the levies made on the assigned properties under executions issued on the judgments. The defendant was party to the agreement. *Held,* that defendant as indorser of one of the notes, and accommodation maker of the other, was not discharged from his liability on the notes.

Argued January 17, 1893. Appeal, No. 132, July T., 1892, by defendant, Andrew C. Craig, from judgment of C. P. No. 4, Phila. Co., June T., 1889, No. 82, on verdict for plaintiff. Before Paxson, C. J., Sterrett, Green, Williams, Mc-Collum, Mitchell and Dean, JJ.

Assumpsit by holder against indorser of promissory notes.

At the trial, before Thayer, P. J., plaintiff gave in evidence note dated Oct. 28, 1885, for $2,500, payable in four months, signed by Andrew C. Craig as maker, to order of Henry M. Stone. He also offered in evidence note dated Jan. 11, 1886, for $2,500, made by William Wilson Silversmith Co. to the order of E. Y. Eltonhead, treasurer, payable on March 13, 1886, without grace, indorsed by E. Y. Eltonhead, treasurer, Andrew C. Craig and Horace S. Woodbury. From the evidence it appeared that the first of these notes was discounted by the Tradesmen's National Bank. The second was discounted by the Union National Bank. The first note was made by Craig as accommodation maker, the second note was made by him as accommodation indorser. Woodbury and Craig practically owned all the shares of the Silversmith Company. In consequence of financial embarrassments, the Silversmith Company

on March 24, 1886, resolved, at a meeting at which appellant was present, upon his motion, to protect and prefer certain debts due and owing by it by delivering to certain of its creditors its judgment notes for the respective amounts due to them.

The aggregate of the judgments thus authorized to be confessed was upwards of $24,000. The judgment note to be delivered to the Tradesmen's Bank was in the sum of $4,000. That which was authorized to be delivered to the Union National Bank was in the sum of $7,482.37. These amounts included not only the two notes, which were then in the possession of the respective banks, but also other amounts then due to each of said banks.

Five days later, viz., March 29, 1886, at a special meeting of the board of directors of the Silversmith Company, upon motion of appellant, it was resolved that: The president and treasurer be authorized and empowered to execute and deliver to the Guarantee Trust and Safe Deposit Company of the city of Philadelphia, or such other person or corporation as may be willing to accept the trust, a general assignment without preference, in accordance with the laws of the state of Pennsylvania, for the benefit of creditors.

The deed of assignment from the Silversmith Company to the Guarantee Trust and Safe Deposit Company, for the benefit of creditors, was delivered March 29, 1886, a judgment was entered in favor of the Tradesmen's National Bank and of the Union National Bank, respectively, for the amount of the judgment notes delivered to each of them. On the same day a fi. fa. issued upon each judgment which was levied upon the property of the Silversmith Company.

On May 31, 1886, the Guarantee Trust and Safe Deposit Company advanced its own money, to the amount of $7,495.57, in the purchase of the judgment which had been entered in favor of the Union National Bank. On the same day it advanced its own money, to the extent of $4,012.42, in purchase of the judgment which had been entered in favor of the Tradesmen's National Bank. Each judgment, on March 31, 1886, was marked to the use of one of its directors, J. J. Stadiger. The levies under said judgments were on that day stayed.

Defendant testified as to the arrangement between himself, the Guarantee Trust and Safe Deposit Company and the Silver-

smith Company.  Speaking of an interview at which Mr. Diehl, who was counsel for himself, and for the Silversmith Company, Mr. Cochrane, the president of the Guarantee Company, Mr. Woodbury and himself were present, he said : " Mr. Diehl explained to Mr. Cochrane the company was in financial difficulties, and that they desired to protect the makers and indorsers of the notes that had been given to them for their accommodation.  Q. What was the plan that he proposed for doing this ? A. He proposed, as he had suggested to us before at his office and talked over, that the Silversmith Company should give judgment notes to protect the makers and indorsers of the accommodation notes.  Q. What then occurred ?  A. That then the Silversmith Company should make an assignment, the assignee should step in and pay the judgment notes and withdraw the levies.  Q. To whom was it proposed that these judgments should be given and by whom ?  A. The judgments were to be given by the Wilson Silversmith Company to the holders of the accommodation paper.  Q. In this case who were the holders of that paper ?  A. The Union National Bank and the Tradesmen's National Bank.  Q. To this proposition what reply, if any, was made by Mr. Cochrane ?  A. Mr. Cochrane said he would have to consult the directors, he would have to satisfy himself or be satisfied that the assets of the company would be sufficient to repay them for their advance.  Q. Was the Guarantee Trust Company to be the assignee of the Silversmith Company ?  A. They were to be the assignee under the conditions that they would pay the judgment notes and withdraw the levies."

In his cross-examination, defendant further testified : " Q. And the question was whether Mr. Cochrane would advance the money to these people ?  A. The question was whether he would pay the judgments.  Q. Pay the judgments to whom ? To the people who you were to confess them to ?  Is not that so ?  A. To pay the judgments to the people who held the judgments.  Q. Was he not then, when he paid these judgments, to take them marked to the use of his own company ?  A. Mark them to the use of his own company or anybody he pleased. Q. Then it was understood that after they had done that, if his company was made the assignee for the benefit of creditors, that the execution should be withdrawn ?  Is not that so ?

A. They would have to agree to withdraw the executions. Q. That was the understanding, that, if they did pay the judgments, they could have them marked to their own use and then the executions should be withdrawn, if the assignment was made? Was not that the understanding? A. Yes, sir. Q. And the executions were to be withdrawn? A. The levies were to be withdrawn."

Mr. Cochrane testified that he made no bargain about the surrender of any collateral.

The court gave binding instructions for plaintiff. [1]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 2) instructions, quoting substance of instructions, and (3) entry of judgment.

*J. B. Townsend, Jr.,* and *E. H. Hanson,* for appellant, cited: Gunnis v. Weigley, 114 Pa. 191; Com. v. Vanderslice, 8 S. & R. 452; Everly v. Rice, 20 Pa. 297; Sitgreaves v. Bank, 49 Pa. 359; Boschert v. Brown, 72 Pa. 372; Fegley v. McDonald, 89 Pa. 128; Bank v. Henninger, 105 Pa. 496; Hutchinson v. Woodwell, 107 Pa. 509.

*John G. Johnson, Charles E. Pancoast* with him, for appellee, cited: Stephens v. Monongahela National Bank, 88 Pa. 162.

OPINION BY MR. JUSTICE McCOLLUM, May 22, 1893:

The appellant contends that he is discharged from liability on the notes in suit by the agreement and action of the appellee in connection with the assignment to the latter by the William Wilson & Son Silversmith Company of all its property in trust for the benefit of its creditors. Assuming, as he claims, that he made one note and indorsed the other for the accommodation of the Silversmith Company, our first inquiry is whether he has submitted any evidence of an agreement by the appellee as purchaser of the notes which releases him from liability upon them. If the evidence fails to show such an agreement we next inquire whether it discloses any action on the part of the appellee in its administration of the trust which discharges him. If either of these inquiries is answered in the affirmative the judgment must be reversed ; if both are answered in the negative it must be affirmed.

It appears from the testimony produced by the appellant that he and Woodbury owned nearly all the stock of the Silversmith Company, and were personally liable for a considerable portion, if not all of its indebtedness; that on the 24th of March, 1886, on the report of its president that he had been unable "to secure the $25,000 authorized at the special meeting held March 3, 1886, and that the need for immediate funds and promptness to prevent disaster to the business was imminent," it was, on motion of the appellant, unanimously resolved by the directors that it was expedient that certain debts due and owing by the company should be protected and preferred, and that its president and treasurer should execute and deliver judgment notes of the company to certain creditors for the respective amounts due them. On the 29th of March, 1886, at a special meeting of the board of directors, the president of the company reported that judgment notes had been executed and delivered as authorized and directed and that executions had been issued for the amounts therein stated. He then advised that an immediate assignment be made for the benefit of creditors and stockholders, and thereupon, on motion of the appellant, it was resolved "that the president and treasurer be authorized and empowered to execute and deliver to the Guarantee Trust and Safe Deposit Company of the city of Philadelphia, or such other person or corporation as may be willing to accept the trust, a general assignment without preference, in accordance with the laws of the state of Pennsylvania for the benefit of creditors." In pursuance of this resolution, and on the day it was passed, a deed of assignment in trust for the creditors of the Silversmith Company was made to the appellee and recorded. The entire action of the Silversmith Company in relation to the assignment appears in the resolution and conveyance to which we have referred, and in this action there is clearly no discharge of the appellant from his liability as maker or indorser of the notes in suit. Indeed, it was not within the power of the company to extinguish this liability except by payment of the notes. The holders of them by agreement with the company might have released him, but they did not. It is true that the company confessed judgments to the holders of the notes for the amounts represented by them, but the notes were not surrendered, nor was there any stipulation or understand-

ing that the judgments should be considered as satisfaction of them.   The creditor in whose favor a judgment was thus confessed was not required or invited to give up any security for his claim.   The judgment was not in lieu of, but in addition to the securities he then held for it.   When the appellee on the request of the appellant and Woodbury invested its own funds in these claims, it apparently succeeded to all the rights and securities possessed by the parties from whom it purchased them.   In the transaction between the vendors and vendee of the claims there was no qualification of the rights or withholding of the securities pertaining to them.   The vendee received and held the notes, in connection with the transfer of the judgments confessed by the company, as security for the money it expended in the purchase of the claims, and its right to so hold them was not disputed by the company or its stockholders or by any maker or indorser of the notes.   Is there anything in the evidence submitted by the appellant which qualifies the apparent right of the appellee to the remedies on these securities which were open to the original holders of them?   There is certainly nothing in it to support a finding that the appellee agreed to release the appellant from his liability as maker or indorser.   It shows, however, an agreement by the appellee to withdraw the levies made on the assigned property by virtue of the executions issued on the judgments confessed by the debtor company and that such agreement was promptly and strictly complied with.   If anything is made clear by this evidence it is that the appellee received the property of the Silversmith Company, not as a purchaser of it, but in trust for the creditors of the assignor.   Thenceforth it held and was bound to account for the property under the assignment and the laws governing the trust created by it.   It does not appear that in the administration of the trust there was any want of fidelity to the interests of creditors or stockholders, or that there was any misappropriation of the assets.   That the appellee lawfully accounted for the property which came to its possession under the deed is a fair inference from its offer to show its account and the adjudication upon it, and the appellant's objection to this offer was a substantial confession that the production of the account would not afford any support for his defence. In view of the uncontradicted testimony as to the cause of the

delay in the administration of the trust and the appellant's admissions respecting the agreement under which the levies were withdrawn, he has no standing to complain of either. It is proper to add in this connection that, if there were inaccuracies in the account, the time and place for their correction was in the court in which it was filed, and upon the adjudication of it.

It is probable that Woodbury and the appellant had exaggerated ideas of the value of the property and that the appellee gave undue weight to their representations on the subject. It is difficult to account for the action of the parties interested in the trust on any other theory. This action, however, is consistent with their mutual belief that the assets administered in accordance with the plan of the principal stockholders were sufficient to pay the debts and expenses and to leave a balance for the assignor. If this was their honest belief, the withdrawal of the levies, without an intimation from the principal stockholders that they desired to be released from their personal liability for the debts of the company, is intelligible. It would hardly be expected that in connection with their representations as to the value of the assets and their demand for the withdrawal of the levies they would request to be released. It is probable that such a request from them would have resulted in a refusal by the appellee to invest its own funds in the purchase of claims against the company or to accept the trust.

We are clearly of opinion that the testimony submitted by the appellant cannot be regarded as sufficient to release him from liability on the notes in suit. We therefore overrule the specifications of error.

Judgment affirmed.